UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES PARIES,

                                    Plaintiff,

            -against-                                    5:11-CV-0478 (LEK/ATB)

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]

                        Defendant.
_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

        Plaintiff James Paries ("Plaintiff") appeals from a decision of Defendant Carolyn W. Colvin,

the Acting Commissioner of Social Security ("Defendant"), denying Plaintiff child's insurance

benefits.  Dkt. No. 1 ("Complaint").  For the following reasons, the Commissioner's decision is

affirmed.

## II.    BACKGROUND

### A.  Procedural History

        On July 11, 2007, Plaintiff filed an application for Social Security disability insurance

benefits, child's insurance benefits, and supplemental security income, alleging disability beginning

April 1, 2005.  Dkt. No. 8-5 at 134-55.  Plaintiff alleged that his disability was caused by multiple

sclerosis ("MS"), depression, anxiety, and irritable bowel syndrome ("IBS").  Dkt. No. 8-6 at 137.

The claim for child's insurance benefits was denied on September 28, 2007, and Plaintiff then filed

_____

        [1] The Clerk of the Court is directed to substitute Carolyn W. Colvin, Acting Commissioner
of Social Security, for Defendant Michael J. Astrue and amend the caption accordingly.  See FED. R.
CIV. P. 25(d).

a written request for a hearing. Dkt. No. 8-4 at 56-69. Administrative Law Judge ("ALJ") John S. Pope held a hearing ("ALJ Hearing") on September 22, 2009. In a written decision, the ALJ denied Plaintiff's request for child's insurance benefits, concluding that Plaintiff was not disabled as defined by § 223(d) of the Social Security Act prior to his attaining the age of 22. Id. at 21. Plaintiff filed a request for review of the ALJ's decision on February 26, 2010. The request was denied by the Appeals Council on March 8, 2011, at which time the ALJ's decision became the final determination of the Commissioner. Dkt. No. 8-2 at 1. Plaintiff then commenced this action by filing the Complaint on April 25, 2011. Compl. Plaintiff requests that the Court reverse the decision of the Commissioner or remand for further development of the record. Id. Defendant filed an Answer on October 11, 2011. Dkt. No. 7 ("Answer").

**B. Hearing Testimony**

At the ALJ Hearing, Plaintiff testified that he was able to groom himself, make small meals, and eat without aid. Dkt. No. 8-2 at 35. He also testified that he watches his daughter on Tuesday, Thursday, and Saturday, and frequently spends time with his friends before he leaves for work at 4:30 P.M. Id. at 36. At the time of the hearing, he worked for his brother-in-law cleaning legal offices for five nights per week for four hours per night. Previously, he worked for Wegmans for 32 hours per week. Id. at 31-32, 43.

Plaintiff stated at the ALJ Hearing that he is able to lift thirty pounds, stand/walk for three to four hours, stand for one-and-a-half hours, and sit for two hours in an eight-hour workday, as well as drive without any difficulty. Id. at 41-42. Plaintiff stated that he is, however, in constant pain and experiences numbness in his hands, right arm, feet, and legs. Id. at 40-42.

Vocational expert Pamela Tucker ("VE Tucker") testified at the ALJ Hearing. Id. at 46.

2

The ALJ presented VE Tucker with a hypothetical individual in the age range of 18-22 who was a high school graduate and had the same past relevant work experience as Plaintiff.  Id. at 47.  The hypothetical individual was also limited to light work and could only frequently finger and feel with the right hand.  Id.  The ALJ then asked VE Tucker how the restrictions would affect the performance of past relevant work.  Id.  VE Tucker stated that the hypothetical person would be capable of performing the work of an usher, ticket taker, and parking lot attendant, totaling 26,000 positions within the region.  Id. at 48.  Further, she testified that there were a total of 100,000 positions within the region that could accommodate Plaintiff's restrictions, including 25,000 sedentary positions.  Id.

### C. Physician Opinions

#### 1. Dr. Nabil A. Aziz, M.D.

Dr. Aziz, a neurologist, performed an initial neurologic consultation on March 24, 2005, conducted MRIs on March 29 and April 5, 2005, and ultimately diagnosed Plaintiff with early stages of relapsing-remitting MS on April 9, 2005.  Dkt. No. 8-7 at 188-91.  Dr. Aziz noted that Plaintiff's cranial nerves, motor, sensory, coordination, and gait were all normal; his muscle reflexes were 2/4; and his Romberg test was negative.[2]  Id.  Plaintiff began a course of medication at this time.  Id.

#### 2. Dr. Cornelia Mihai, M.D.

On July 25, 2005, Dr. Mihai, a neurologist, conducted an initial neurologic evaluation at the request of Plaintiff's primary care physician, Dr. Ellen Schurman.  Id. at 217.  Dr. Mihai affirmed Dr. Aziz's diagnosis of MS and stated that Plaintiff was stable and should stay active and exercise

---

[2] A Romberg test is used to test an individual's postural and balancing sense.  THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 1752 (18th ed. 2006).

regularly to maintain strength, endurance, and energy level. Id. at 219. On November 30, 2005, Dr. Mihai noted that Plaintiff's physical examination was generally normal; however, Plaintiff was experiencing decreased vibratory sensation in both feet, his left side being worse than his right side, as well as decreased pinprick sensation in his feet and right-hand fingertips and slightly decreased hand coordination. Id. at 216. On March 1, 2006, Dr. Mihai again noted that Plaintiff's physical examination was normal and that he was still experiencing decreased vibratory sensation in both feet and hands, as well as decreased pinprick sensation over the right side of his body. Id. at 213. Plaintiff had not been exercising but was strongly encouraged by Dr. Mihai to do so. Id. at 213-14. On December 4, 2006, Plaintiff complained of a new symptom, a pulling sensation in both of his legs. He also admitted that he was not adhering to his medication regimen and had an unused two-month supply in his refrigerator. Id. at 211. Plaintiff was exercising every other day at this time. Id.

On March 12, 2007, Plaintiff reported to Dr. Mihai that he was adhering to his medication regimen and that his symptoms had improved, but that he was experiencing increased fatigue. Id. at 209. Dr. Mihai noted full strength in Plaintiff's upper and lower extremities; intact senses with mild decrease in vibration sense in ankles and toes; normal coordination; steady gait; and ability to toe, heel, and tandem walk without any problems. Id. at 210. On June 18, 2007, Dr. Mihai expressed concern about Plaintiff's condition and suggested a medication change; however, Plaintiff stated that he did not want to change medications because he was concerned about the different side effects. Id. at 208. On July 10, 2007, Plaintiff complained of tingling in his feet and right hand, urinary urgency and frequency, fatigue, and stress. Id. at 205. Dr. Mihai noted that Plaintiff had full strength in his lower and upper extremities with a slight decrease in vibratory and pinprick

sensation, as well as slightly decreased coordination but stable gait. Id. at 206. Dr. Mihai advised

Plaintiff to exercise regularly and completed a form authorizing Plaintiff to continue his

employment at Wegmans. Id.

### 3. Dr. Richard Weiskopf, M.D.

Dr. Weiskopf conducted an internal medical consultative examination on Plaintiff on August

31, 2007. Id. at 228. Plaintiff was diagnosed with MS, IBS, anxiety, and depression. Id. at 231.

Dr. Weiskopf concluded that Plaintiff had no limitation on sitting, standing, walking, bending, or

lifting. Id. Plaintiff had a mild limitation on climbing and carrying, as well as decreased use of his

right hand due to decreased grip strength and manual dexterity of his right hand. Id.

### 4. Dr. Dennis M. Noia, Ph.D.

Also on August 31, 2007, Dr. Noia conducted a psychological consultative examination on

Plaintiff. Id. at 240. During the examination, Dr. Noia observed that Plaintiff had a normal motor

behavior and gait; a coherent thought process; intact attention, concentration, and memory; and

average intellectual functioning. Id. at 241-42. Dr. Noia noted that vocationally, Plaintiff was

capable of understanding and following instructions, could regularly attend to a routine and

maintain a schedule, had the ability to relate to and interact well with others, and was able to deal

with stress with the help of medication. Id. at 242. Dr. Noia also diagnosed Plaintiff with MS, IBS,

and depression. Id. at 243.

### 5. Dr. Burk Jubelt, M.D.

On December 17, 2008, Dr. Jubelt completed a radiology consultation report on Plaintiff

after conducting three MRI scans. Id. at 262-63. The MRI of Plaintiff's brain revealed that

Plaintiff's MS was progressing with multiple new enhancing lesions, compatible with progressive

MS.  Id. at 262.  On January 12, 2009, Dr. Jubelt expressed great concern about the multiple new

lesions on Plaintiff's brain, stating that the MS was very active.  Id. at 264.

More recently, on May 6, 2009, Dr. Jubelt noted that Plaintiff had not been complying with

his medication regimen.  Id. at 269.  Dr. Jubelt changed Plaintiff's medication to a once-a-week

dose the hope that Plaintiff would be more compliant with the medication regimen, which he was.

Id.  At that time, Plaintiff did not complain of any new numbness, tingling, or weakness.  Id.

However, Plaintiff stated that he still experienced intermittent numbness in his extremities and

extreme fatigue.  Id.  Even though Plaintiff's muscle bulk was within normal limits, Dr. Jubelt

observed that Plaintiff's gait was slightly wide and unstable and that his tandem gait was also

slightly unsteady.  Id. at 270.  Plaintiff was experiencing left-foot drop and was unable to walk on

the toes of his left foot.  Id.  Dr. Jubelt concluded that Plaintiff had relapsing-remitting MS but

appeared to be clinically stable.  Id.

On August 18, 2009, nurse practitioner Pamela Kirch ("N.P. Kirch") completed a residual

functional capacity ("RFC") report on Plaintiff, on which Dr. Jubelt signed off.  Id. at 265-66.  N.P.

Kirch found that Plaintiff had upper/lower extremity weakness and impaired balance.  Id. at 265.

The report determined that Plaintiff: (1) could lift or carry up to ten pounds frequently, twenty

pounds occasionally, and never more than twenty pounds; (2) could sit for two hours at a time and

for four hours total in an eight-hour workday and could stand and walk for less than one hour; (3)

had left arm and left hand weakness, as well as impaired balance; (4) could occasionally climb

stairs, but never climb ladders, balance, stoop, kneel, or crouch; and (5) did not have any hearing or

vision impairments but should not be exposed to extreme heat or humidity.  Id. at 265-66.

**D. Commissioner's Decision**

Social Security Act § 202(d) requires that a claimant have a disability before she attains the age of 22 to be eligible for child's insurance benefits. The ALJ found that Plaintiff had not attained age 22 as of April 1, 2005, the alleged onset date of disability, and had not engaged in substantial gainful activity since that date. Dkt. No. 8-2 at 14. The ALJ also found that Plaintiff had MS, which is considered a severe impairment. Id. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Id. at 16. The ALJ determined that Plaintiff had the RFC to perform light work with the limitation that he did not frequently finger, handle, and feel with only the right hand. Id. Further, Plaintiff had no past relevant work within the RFC, and, because he was eighteen years old, he was defined as a younger individual on the alleged disability onset date. Id. at 20. In addition, the ALJ found that Plaintiff had at least a high school education, was able to communicate in English, and did not have any past relevant work. Id. After considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that the claimant could perform. Id. Finally, the ALJ found that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time prior to December 11, 2008, the date he attained age 22. Id. at 21.

**III.    STANDARD OF REVIEW**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Instead, a reviewing court will reverse the Commissioner's determination only if the correct legal standards were not applied or if the

7

determination was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles"); Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

The substantial evidence standard requires evidence amounting to "more than a mere scintilla" and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  A court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.[3]  See 20 C.F.R.

---

[3] This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the

§§ 416.920, 404.1520.  The Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, and the five-step process remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42 (1987).  While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  <u>See</u> <u>id.</u> at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582 (2d Cir. 1984).

At step four of the analysis, the ALJ must determine Plaintiff's RFC.  20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(e).  RFC is:

> what an individual can still do despite his or her limitations . . . .  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.

<u>Melville v. Apfel</u>, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)).  In assessing the RFC of an individual, the Commissioner must consider the claimant's impairment "and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the individual] can do in a work setting."  20 C.F.R. § 404.1545(a)(1).  Accordingly, the Commissioner must assess the RFC based on all relevant and medical evidence in

---

claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982); <u>see also</u> <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

the record.  Id. §§ 404.1520(e), 404.1545(a)(3).  Ultimately, the RFC is used to determine whether a

claimant can perform past work.  Id. § 404.1545(a)(5)(i).  If, however, the Commissioner concludes

that the claimant, based on her RFC, cannot perform past work, then the ALJ uses the RFC at step

five to determine whether the claimant can adjust to other work that exists in the national economy.

Id. § 404.1545(a)(5)(ii).

The fifth step of the inquiry is divided into two parts.  First, the Commissioner must assess

the claimant's job qualifications by considering her physical ability, age, education, and work

experience.  Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A);

Heckler v. Campbell, 461 U.S. 458, 460 (1983); 20 C.F.R. §§ 416.920(g), 404.1520(g).

## IV.  DISCUSSION

### A.  Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed for four reasons.  See

generally Dkt. No. 12 ("Plaintiff's Brief").  First, Plaintiff asserts that his impairments meet the

criteria for Listing 11.09.[4]  Id. at 13.  Second, Plaintiff argues that the ALJ's RFC determination is

not supported by substantial evidence because he failed to follow the treating-physician rule, and

that the ALJ erred by failing to engage in a function-by-function analysis when determining

Plaintiff's RFC.  Id. at 16.  Third, Plaintiff contends that the ALJ failed to apply the appropriate

legal standards for assessing Plaintiff's credibility.  Id. at 21.  Fourth, Plaintiff asserts that the ALJ's

step-five determination is not supported by substantial evidence and is the product of legal error.  Id.

at 24.  The Court addresses each of these arguments in turn.

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1, at 11.09.

*1.  Plaintiff's Impairments*

The term "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(a).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

Id. § 423(d)(2)(a).  This determination does not take into account whether such work exists in the immediate area in which the individual lives, whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  Id.

MS is a listed medical impairment in Appendix 1 to 20 C.F.R. Part 404, Subpart P ("Appendix 1");[5] however, in order to be considered a sufficiently severe impairment, it must be coupled with at least one of the following three symptoms: (1) persistent disorganization of motor function; (2) visual or mental impairment; or (3) "significant, reproducible fatigue or motor function with substantial muscle weakness on repetitive activity in areas of the central nervous system known to be pathologically demonstrated on physical examination involved by the [MS] process" resulting from the neurological dysfunction.  App. 1 at 11.09(A)-(C).  Symptom (1) requires that a claimant have significant and persistent disorganization of motor function[6] in two extremities, resulting in

---

[5] "The Listing of Impairments (the listings) is in appendix 1 of this subpart.  It describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).

[6] "*Persistent disorganization of motor function* in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to

11

sustained disturbance of gross and dexterous movements, or gait and station.  Id. at 11.04(B).  There

is no dispute that Plaintiff has MS, and Plaintiff is not arguing that he is visually or mentally

impaired.  The ALJ concluded that Plaintiff did not have symptoms (1) or (3) and therefore did not

have an impairment or combination of impairments that meets or is medically equal to a listed

impairment in Appendix 1.

Courts otherwise assess the severity of a mental impairment such as MS according to the

functional limitations imposed by the impairment using four criteria: (1) activities of daily living;

(2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.

Id. at 12.00(C).  The ALJ concluded that Plaintiff had no limitation for criteria (1), (2), and (4), and

had only a mild limitation for criterion (3).  The Court addresses the substantial evidence in the

record supporting the ALJ's conclusions as to each criterion.

At the hearing, Plaintiff testified that he is able to wake up in the morning, shower and

groom himself, eat, and take his medication without any assistance.  Dkt. No. 8-2 at 35.  Plaintiff

also stated that his daily activities after his morning routine include watching television, taking care

of his daughter three times per week, spending time with friends, and working part-time.  Id. at 36.

Plaintiff can also drive a vehicle without hardship.  Id. at 42.  During Plaintiff's August 31, 2007

psychiatric examination conducted by the state agency examiner Dr. Noia, Plaintiff stated that he

worked fifteen to thirty-two hours per week as a seafood-counter worker and was able to dress,

bathe, cook, clean, manage his money, and use public transportation without difficulty.  Id. at 237.

Plaintiff also testified at the hearing that he was able to lift thirty pounds, walk for three to four

---

cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or
in various combinations, frequently provides the sole or partial basis for decision in cases of
neurological impairment. The assessment of impairment depends on the degree of interference with
locomotion and/or interference with the use of fingers, hands, and arms."  App. 1.

hours, stand for one and one half hours, and sit for two hours all in an eight-hour workday, and has no difficulty with hand or foot controls. Id. at 41. These restrictions are also consistent with state agency examiner Dr. Weiskopf's opinion. Dkt. No. 8-7 at 229-31. Therefore, the ALJ's determination that Plaintiff has no restriction in his activities of daily living was supported by substantial evidence.

There is also substantial evidence supporting the ALJ's determination that Plaintiff has no limitation in the area of social functioning. Plaintiff testified at the hearing that he cares for his daughter and visits with his friends regularly. Dkt. No. 8-2 at 36. During his psychiatric examination, Dr. Noia noted that Plaintiff gets along well with his friends and family and that he appears to be able to relate and interact appropriately with others, as well as deal with stress appropriately with the help of medication. Dkt. No. 8-7 at 242. These findings also are consistent with Dr. Weiskopf's opinion that Plaintiff's social skills are adequate. Id. at 246.

At the hearing, Plaintiff testified that he sometimes has difficulty concentrating and answering questions. Dkt. No. 8-2 at 40. However, Dr. Noia noted that Plaintiff's attention, concentration, and memory were intact, and that his intellectual functioning was in the average range. Dkt. No. 8-7 at 242. Plaintiff was also noted to have been able to understand and follow simple instructions and perform simple and some complex tasks. Id. These limitations also are consistent with Dr. Weiskopf's opinion finding that Plaintiff had only a moderate limitation in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Id. at 245. Therefore, there is substantial evidence supporting the ALJ's determination that Plaintiff has a mild limitation in concentration, persistence, or pace.

Plaintiff has not reported any experiences with episodes of decompensation. Therefore, no evidence supports a finding that Plaintiff has a limitation in this functional area.

Thus, because Plaintiff's medically determinable mental impairment causes no more than a mild limitation in the four functional areas, his impairment is not severe, and he does not meet or functionally equal Listing 11.09.

A court may also assess the severity of a mental impairment using Listing 12.04(C), 20 C.F.R. pt. 404, subpt. P, app. 1, at 12.04(C), which states that

> medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of 1 or more years inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Here, there is no evidence in the record to establish any of these three criteria. Therefore, as the Commissioner determined, there is substantial evidence upon which to conclude that Plaintiff's impairment is not severe and, as a result, he is not disabled.

## 2. *RFC Determination*

### a. Treating-Physician Rule

Under the "treating physician rule," an ALJ must give controlling weight to the opinion of the claimant's treating physician when that opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Carter, 221 F.3d 126, 134 (2d Cir. 2000); 20 C.F.R. § 404.1527(d)(2). Generally, this is because "these sources are

likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment."  20 C.F.R. § 404.1527(c)(2).  Physicians that are engaged in the primary treatment of a claimant are given more deference.  See, e.g., Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008).  Although the treating-physician rule need not be applied if the treating physician's opinion is inconsistent with other substantial evidence in the record, "not all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician."  Id.

In evaluating whether a treating physician's opinion should be given controlling weight, an ALJ must consider: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."  20 C.F.R. § 404.1527(c) (2); see also Shaw, 221 F.3d at 14 (quoting Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998)).  In addition, an ALJ must set forth the reasons for the weight that he assigns to the treating physician's opinion.  20 C.F.R. § 404.1527(c)(2); Shaw, 221 F.3d at 134. Even if an ALJ improperly assigns significant weight to a source other than the treating physician, the ALJ is not in error so long as the final RFC determination is supported by substantial evidence in the record.  See Napierala v. Astrue, No. 07-CV-0706, 2009 WL 4892319, at *6 (W.D.N.Y. Dec. 11, 2009).

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not afford the opinion of Plaintiff's treating neurologist, Dr. Burk Jubelt, controlling weight.  Pl.'s Br. at 16.  The ALJ did not give controlling weight to Dr. Jubelt's RFC opinion because it was rendered using a standard fill-in-the-blank questionnaire that required little

written explanation and was completed by N.P. Kirch. See Dkt. No. 8-2 at 19. In addition, it appeared to the ALJ that Dr. Jubelt's opinion relied more on Plaintiff's subjective reports than objective evidence. Id. Under the deferential standard of review afforded to ALJ decision-making, the Court concludes that a "reasonable mind might accept [this explanation] as adequate to support a conclusion." Richardson, 402 U.S. at 401.

However, even if a reasonable mind would not accept this explanation as adequate, the ALJ's RFC determination is still supported by the substantial weight of the evidence and is therefore not a ground for remand. Barnhart, 312 F.3d at 588. Not only is the ALJ's RFC determination supported by physicians who had previously treated Plaintiff, including Dr. Aziz and Dr. Mihai, it is also supported by the RFC opinion rendered on September 24, 2007, by the disability analyst Mr. R. Price. Id. at 234-39. Mr. Price opined that Plaintiff's exertional limitations were: to occasionally lift or carry 20 pounds and frequently carry 10 pounds; to stand or walk and sit for about six hours in an eight-hour workday; and not limited in pushing or pulling objects. Dkt. No. 8-7 at 234. In support of these conclusions, Mr. Price referred to findings of Dr. Mihai and the internal medical examination, as well as Plaintiff's job history. Id. at 234-35. Plaintiff did not seem to have any postural limitations but had manipulative limitations in handling, fingering, and feeling. Id. at 235. Plaintiff did not have any visual, communicative, or environmental limitations. Id. at 236. Mr. Price concluded that Plaintiff's allegations were partially credible because they are supported by the evidence in the record, but not to the degree alleged. Id. at 237.

For the foregoing reasons, Dr. Jublet's opinion need not have been afforded controlling weight. However, regardless of whether the ALJ should have given Dr. Jublet's medical opinion controlling weight, there is substantial evidence in the record to support the ALJ's RFC

determination.  Therefore, the ALJ was not in error and there is no reason for remand.

b.  Function-by-Function Analysis

In determining a claimant's RFC, an ALJ must conduct a function-by-function analysis that includes determining the claimant's: (1) physical abilities; (2) mental abilities; (3) other abilities affected by the impairment(s), including environmental restrictions; and (4) the total limiting effects of all of claimant's impairments. 20 C.F.R. §§ 404.1545, 416.945.  For the following reasons, contrary to Plaintiff's contention, the ALJ performed a function-by-function analysis to determine Plaintiff's RFC.

The ALJ took Plaintiff's physical abilities into consideration when determining Plaintiff's RFC after reviewing the evidence from both Plaintiff's hearing testimony and the various physician's opinions.  The ALJ also reviewed Plaintiff's mental abilities and determined that Plaintiff's depression did not cause more than a minimal limitation on Plaintiff's ability to work and that he had no other mental impairments.  When making the mental-ability determination, the ALJ analyzed each functional area of Listing 12.00C, including: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  Further, the ALJ considered other abilities affected by Plaintiff's impairment which included limiting exposure to extreme heat and humidity.  Finally, the ALJ considered the total limiting effect of all of Plaintiff's impairments including IBS, MS, and depression.  Therefore, the ALJ performed a function-by-function analysis when determining Plaintiff's RFC.

*3.  Plaintiff's Credibility*

Plaintiff's third argument is that the ALJ failed to apply the appropriate legal standards in assessing Plaintiff's credibility.  Pl.'s Br. at 21.  However, the Court concludes that: (1) there is no

reasonable basis to doubt that the ALJ applied the correct legal principles in determining Plaintiff's credibility; and (2) that determination was supported by substantial evidence.

When there is conflicting evidence about the extent of a material issue such as a claimant's pain or other disability, the ALJ must evaluate that claimant's credibility. See, e.g., Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999); Donato v. Sec'y of Dep't of Health & Human Servs., 721 F.2d 414, 418 (2d Cir. 1983); Correale-Englehart, 687 F. Supp. 2d at 434. In so doing, the ALJ must adhere to a two-step process: (1) determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms; and (2) once an underlying impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine the extent to which they limit the Plaintiff's ability to perform basic work activities. 20 C.F.R. § 404.1529(a)-(c). An ALJ "may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable [a court] to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (Kahn, J.) (quoting Gallardo v. Apfel, No. 96-CV-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). However, the ALJ's discretion to weigh testimony is not unlimited because subjective testimony is an important factor to be considered when determining disability. See Correale-Englehart, 687 F. Supp. 2d at 434 (citing Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984)). An ALJ's credibility analysis is not supported by substantial evidence when the analysis is based on inaccurate or inconsistent evidence. See, e.g., Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010) (remanding because ALJ misinterpreted testimony); Horan v. Astrue, 350 F. App'x 483, 485 (2d

18

Cir. 2009) (remanding because ALJ made factual errors, based assessment on testimony that did not exist, and failed to consider work history); <u>Haggerty v. Comm'r of Soc. Sec.</u>, No. 10-CV-306, 2011 WL 841443, at *12 (N.D.N.Y. Feb. 14, 2011) (remanding because ALJ's factual summary was inaccurate and credibility analysis was therefore flawed).

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Dkt. No. 8-2 at 17. The Court concludes that the ALJ applied the correct legal standards in making his credibility determination and, furthermore, that his determination was supported by substantial evidence.

It was not legal error to assess Plaintiff's credibility while determining his RFC. According to 20 C.F.R. § 416.929, a claimant's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." The ALJ's RFC determination was supported by the substantial weight of the evidence; therefore, using that same information to determine Plaintiff's credibility is not legal error.

In making his credibility determination, the ALJ noted that Plaintiff has not complied with his medication regimen for significant periods of time on numerous occasions, to the point where Plaintiff had a two-month supply in his refrigerator. Dkt. No. 8-2 at 18. These noncomplying periods were consistent with the increased severity of Plaintiff's MS symptoms. <u>Id.</u> Plaintiff also refused to comply with physician recommendations to change medication and exercise regularly.

Id. The ALJ also referred to Plaintiff's testimony at the hearing that his regular day consisted of "waking, showering, dressing, watching television, visiting with friends, eating dinner, and working a part time job." Id. at 17. Plaintiff further stated at the ALJ Hearing that he was able to dress, groom, bathe, cook simple meals, and drive independently. Id. He also claimed to be able to lift thirty pounds, walk for three to four hours, stand for an hour and a half, and sit for two hours during an eight-hour workday. Id. Plaintiff stated that he cared for his daughter three times per week, regularly visited with his friends, and worked a part-time job. Id. Even though Plaintiff received accommodations to perform his employment functions as an office cleaner for his brother-in-law, he was still able to perform his required tasks. Id. at 43. If he was not feeling well on a given day but was unable to get another employee to cover his shift, he was physically able to "make it through" his shift, though it was more difficult. Id. The opinions of Dr. Aziz, Dr. Mihai, Dr. Weiskopf, and Dr. Noia are all consistent with this determination.

Therefore, there is substantial evidence in the record to support the ALJ's finding that the Plaintiff's daily activities are not limited to the extent that would be generally expected given the complaints of disabling symptoms and limitations. Instead, Plaintiff's symptoms and limitations are consistent with the RFC determination of Plaintiff being able to perform a range of light work. Thus, the ALJ applied the correct legal standards in making the credibility determination, and that determination was supported by substantial evidence.

### 4. Step-Five Determination

Finally, Plaintiff argues that the ALJ's step-five determination is not supported by substantial evidence. Pl.'s Br. at 24. At step five of the five-step evaluation process, the burden of proof shifts to the Commissioner to show that "there is other gainful work in the national economy

[that] the claimant could perform." <u>Balsamo v. Chater</u>, 142 F.3d 75, 80 (2d Cir. 1998).

Here, the ALJ determined that Plaintiff had the RFC to perform light work with the limitation that he should not frequently finger, handle, and feel with only the right hand. Dkt. No. 8-2 at 16. The ALJ also concluded that Plaintiff was 18 years old on the date of the alleged disability onset date, had at least a high school education and adequate communication skills, and had no past relevant work. <u>Id.</u> at 20. From these factors, the ALJ followed the requirements of § 202.20 of the Medical-Vocational Guidelines[7] to determine that Plaintiff was not disabled. <u>Id.</u> These guidelines state that a claimant with an RFC determination that is limited to light work as a result of a severe impairment, is an unskilled younger individual, and has at least a high school diploma is not disabled. <u>Id.</u>

At the ALJ Hearing, the ALJ presented a hypothetical to VE Tucker to determine the extent to which Plaintiff's limitations impede his ability to perform an unskilled occupation. <u>Id.</u> VE tucker determined that the hypothetical person would be capable of performing the work of: (1) an usher, consisting of about 9,000 positions; (2) a ticket taker, consisting of about 8,000 positions; and (3) a parking lot attendant, consisting of about 9,000 positions. <u>Id.</u> at 48. She also stated that there would be approximately 25,000 sedentary unskilled positions and 100,000 light unskilled positions that would accommodate Plaintiff's RFC. <u>Id.</u> Because Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, Plaintiff is not disabled.

Plaintiff argues that VE Tucker's determination cannot provide substantial evidence to support the ALJ's decision because the ALJ erred in failing to follow the treating-physician rule.

_____

[7] 20 C.F.R. pt. 404, subpt. P, app. 2.

However, as previously discussed, the ALJ was not in error for failing to follow the treating-physician rule and therefore the hypothetical presented to VE Tucker was complete and can be used to provide substantial evidence in support of the ALJ's decision. Therefore, the ALJ's step-five determination is supported by substantial evidence.

## V.      CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the decision of the Commissioner is **AFFIRMED;** and it is further

**ORDERED**, that the Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

Dated:          August 30, 2013
                Albany, NY

Lawrence E. Kahn
U.S. District Judge